PONDER, Justice.
 

 In this case several suits were consolidated by agreement for all purposes. The suits consolidated were Sam P. D. Coyle, 9510, same plaintiff v. W. C. Horton, 9537, same plaintiff v. H. L. Skannal, 9538, same plaintiff v. L. M. Moffitt, 9539, same plaintiff v, Hodges & Horton, 9562, and same plaintiff v. W. H. Hodges et al., 9561.
 

 On March 13, 1924, plaintiff sold to T. G. Hibbler an undivided one-fourth interest in the oil, gas, and other minerals on, in, and under S. E. % of S. W.
 
 Y,
 
 and W.
 
 Yk
 
 of S. W.
 
 Yk
 
 of S. E.
 
 Yk>
 
 section 23, township 21 N., range 10 W., as shown by deed recorded in volume 63, page 78. On March 15, 1924, Hibbler conveyed to Hodges & Horton %28 interest in the oil, gas, and other minerals under the same land, as shown by deed recorded in volume 63, page 86, and on the same date sold C. B. Hodges %28 interest in the oil, gas, and other minerals under the same land as shown by deed recorded in volume 63, page 87. C. B. Hodges died, leaving as his heirs W. H. Hodges, Mrs. W. M. Synder, Mrs. J. H. Mercer, Miss Mary Hodges, J. L. Hodges, C. B. Hodges, and Mrs. Louella Hodges. On March 15, 1924, Hibbler sold of the oil, gas, and other minerals under the same land to L. M. Moffitt, as shown by deed recorded in volume 63, page 88, and on March 15, 1924, he sold %28 of the oil, gas, and other minerals under said land to H. L. Skannal as shown by deed recorded in volume 63, page 89, and on March 15, 1924, he sold to W. C. Horton %28 of the oil, gas, and other minerals under said land as shown by deed recorded in volume 63, page.85.
 

 On October 10, 1922, plaintiff sold to Harley R. Hinton an undivided one-half interest in the oil, gas, and other minerals under said land as shown by deed recorded in volume 56, page 438, and on November 3, 1922, Hinton conveyed same by deed recorded in volume 56, page 550, to Royalties, Inc., and on November 14, 1923, Royalties, Inc., conveyed same by deed recorded in volume 61, page 528, to North Central Texas Oil Company, Inc.
 

 All of the above saies of interest in mineral rights were made subject to an oil and gas lease that the plaintiff had previously executed to the Gulf Refining Company of Louisiana.
 

 
 *241
 
 Plaintiff is seeking in these several actions of jactitation, or slander of title, to obtain a decree canceling and erasing from the public records the muniments of title under which the various defendants herein hold rights in the oil, gas, and other minerals on the lands of the plaintiff. The contention of the plaintiff being -that the servitude, sold and conveyed to T. G. Hibbler on March 13, 1924, and the various defendants herein who purchased an interest in this servitude from Hibbler, and the servitude sold and conveyed to Harley Hinton on October 10, 1922, and subsequently purchased by the North Central Texas Oil Company, expired on the 15th of March, 1934, and 10th of October, 1932, respectively; that the prescription of ten years for nonuser “liberandi causa” and “acquirendi causa” was specially pleaded; alleging that the documents were still of record and constituted a slander of plaintiff’s title; that demand was made on the defendants for the cancellation of the transfer from the records as required by law which the defendants refused; and for attorney’s fees in the sum of $1,000.
 

 The defendants admitted that there had been no oil or gas produced on the premises from October 9, 1922, till the present time, and that no attempt had been made to secure the production of same.
 

 Defendants contend that there was drilling and production on the N. W. % of the N. E. % of section 21 until June 30, 1931, and that the servitude was kept alive until that date; that the payment of rentals by the lessee kept the servitude alive until March 5, 1926; that the agreement to sell and the agreement to buy the servitudes subject to a previous outstanding lease was “ex necessitate rei,” an agreement that the servitude should be suspended while the outstanding lease was in effect; that prescription did not run for nonusage, for the reason that the lease was an obstacle that interrupted it.
 

 The district court sustained the plea of prescription and ordered the various conveyances complained of canceled from the records, from which judgment the defendants appealed to this court.
 

 Upon examination of the record, we find that the various defendants herein and their authors of title obtained the servitudes from the plaintiff on October 10, 1922, and March 15, 1924; that a- lease was granted by the plaintiff to the Gulf Refining Company on September 5, 1922, covering the land on, which the various defendants claim servitudes and also another tract of land in another section; that the two tracts of land are noncontiguous; that the Gulf Refining Company gave the plaintiff a release of the lease July 11, 1928, which was filed December 26, 1934, and recorded January 10, 1935, in the conveyance records of Webster parish; that the Gulf Refining Company paid rentals on the servitudes in controversy to the plaintiff and the defendants in the proportion of their interests until March 5, 1926.
 

 As to the contention of the defendant that operations in section 21, which is a noncontiguous tract,.interrupted prescription of the servitudes in section 23, this court has already decided that development and production of minerals on noncon
 
 *243
 
 tiguous tracts, embraced in one mineral deed, that each tract represents a distinct servitude and the development and production of minerals from one of the tracts, no matter how extensive such operations may be, will not interrupt the running of prescription, on the other tracts. Frost Lumber Industries, Inc., v. Union Power Co., Inc., 182 La. 439, 444, 162 So. 37, and the authorities cited therein.
 

 We see no merit to defendants’ contention that the purchase of mineral rights subject to a previous exclusive lease is the purchase of a suspended servitude, the prescription of which is also suspended.
 

 The defendants purchased an interest in the mineral rights with the knowledge of and subject to the existing lease.
 

 The lease to the Gulf Refining Company granted exclusive right to explore the land for oil and other minerals, etc. The lease provided that the lessee begin operations in twelve months from date and for extensions for successive periods of six months upon paying the lessor $50 for each extension and that these extensions shall not be prolonged beyond five years.
 

 In the case of William Bremer v. North Central Texas Oil et al., 185 La. 917, 171 So. 75, the plaintiff sought to have certain transfers of mineral rights canceled and erased from the conveyance records on the grounds that these servitudes had been lost by ten years’ prescription of nonusage. The facts in that case were, viz.: The plaintiff sold an undivided half-interest of his mineral rights to Arthur Andrews, who, in turn, sold -those rights to several other persons. The defendants pleaded that the prescription was interrupted by the execution of a joint oil lease by plaintiff and others to A. A. Andrews, which lease was made subsequent to the transfer of the minerals rights. This court held that the prescription of nonusage began from the date of the purchase of the mineral rights and the subsequent lease to defendants’ authors of title, acknowledging therein the right of title of the owners of the servitude was not such an acknowledgment as required by act C.C. art. 3520 to interrupt prescription. The acknowledgement must be accompanied or coupled with the purpose and intention of the party making the acknowledgment to interrupt the prescription then running (citing authorities therein).
 

 This court held in the case of Gulf Refining Co. v. Glassell, 186 La. 190, 171 So. 846, that the lessee in the usual oil and mineral lease merely obtains a personal right, not a real right, and lessee can sue his lessor for damages in event of eviction ; also that purchasers of mineral rights have a real right and may go upon the land and explore it for minerals in order to gain ownership thereof by possessing them (and various authorities cited therein).
 

 In the instant case, in view of the inaction on the part of the defendants to procure production and the fact there was a lease providing for the development of oil and minerals on the land at the time, defendants purchased the mineral rights, coupled with the fact that they accepted their pro rata part of the rentals, thereby extending the term of the lease, to our minds, shows conclusively that, instead of the lease being an obstacle, it was the factor
 
 *245
 
 that induced the defendants to purchase the mineral rights. Mineral rights are usually bought where there is a prospect of development. Purchasers of mineral rights may not purchase with any intention of going upon the land themselves and drilling wells. The defendants undoubtedly, when they obtained these mineral rights, with the knowledge that the lease existed on the property, purchased these mineral rights because there was a prospect of development by the lessee.
 

 Defendants are in no different position, when they purchase' interest in mineral rights subject to an existing recorded lease, than they would be had they joined plaintiff in a lease to lessee after they became the owners of the interest in the mineral rights. In other words, they assumed and made the lease their lease. Therefore the contention of the defendants that the lease is an obstacle which interferes with the exercise of their rights is unfounded.
 

 The last payment for a six-month extension of the lease was made March'S, 1926, which extended the lease to September 5, 1926; therefore the lease was of no effect from September 5, 1926.
 

 The contention of the defendants, that prescription would only begin to run from the date that the lease was canceled from the records, is not well founded.
 

 The defendants could have gone on the land and explored it for oil and other minerals, at any time after the lease lapsed for nonpayment of the amount stipulated for the extension, irrespective of the fact that it had not been canceled from the records. When the lease became inoperative, it could have no binding effect. If the defendants were of the belief that the lease became inoperative only from its cancellation from the records, they had the .same right as the plaintiff under the law to take proceedings to have the lease canceled from the records.
 

 We conclude that, ten years having elapsed since the lease became inoperative, and the defendants having admitted that there was no production or effort to procure same, their servitudes have prescribed by nonuser.
 

 Since we have sustained the pleas of prescription for nonuser, it is unnecessary to consider the plea of estoppel.
 

 It is therefore ordered, adjudged, and decreed that the judgment of the lower court be, and it is hereby, affirmed. Defendants to pay all costs.
 

 O’NIELL, C. J., concurs in the result, but not in the affirmance of the doctrine of the case of Gulf Refining Company v. Glassell.
 

 ROGERS and ODOM, JJ., concur in the decree.