89 So.2d 883

Christien WHITE et al.

v.

FRANK B. TREAT & SON, Inc., et al.

No. 42558.

June 29, 1956.

Rehearing Denied Sept. 28, 1956.

Jackson & Reynolds, Homer, for appellants.

McClendon & Benton, Minden, for appellees.

HAMITER, Justice.

Plaintiffs, the surviving spouse and children of Edmund White, Sr., who died intestate in 1953, are seeking in this cause to be recognized as the owners of a one-fourth mineral interest which the decedent conveyed in 1939, from his 80-acre tract of land in Claiborne Parish, to the ancestor in title of these defendants. Specially pleading prescription liberandi causa, plaintiffs prayed for judgment decreeing that by reason of non-usage for more than ten years the granted servitude (under our jurisprudence such resulted from the mineral conveyance) has been lost in its entirety or, alternatively, extinguished as to all depths and formations other than the Kilpatrick Zone.

After a trial of the merits the district court rejected the demands of plaintiffs. They are appealing from the judgment.

The pertinent facts of the case, undisputed by the litigants, are disclosed by documentary evidence and a stipulation of counsel. From these it appears that the mineral servitude claimed by the defendants and attacked herein was created July 11, 1939 by the decedent, Edmund White, Sr., on the S½ of the NE¼ of Section 16, Township 23 North, Range 7 West, Claiborne Parish. During the ten year period following such date there was no mineral development of or production from that land. However, on March 19, 1947, by virtue of Order No. 105–B issued by the Commissioner of Conservation of the State of Louisiana, the tract was placed in and became a part of an established drilling and production unit restricted to the Kilpatrick Zone under all lands in Sections 14, 15, 16, 17, 20, 21, 22 and 23, Township 23 North, Range 7 West, Claiborne Parish (known as Kilpatrick Zone Unit); and continuously since such date production from the unit, of gas and condensate in paying quantities, has been had (three commercial wells were completed to the Kilpatrick Zone—at depths ranging from 4128 to 4148 feet—in Sections 15, 20 and 23, respectively, and the Commissioner found and declared that these wells efficiently and economically drained the entire unit area). Also, it appears that in 1945 an oil, gas and mineral lease on the 80 acres in question had been granted by Edmund White, Sr., to The Hunt Oil Company, but that on May 2, 1950, the lessee relinquished the lease as to all sands, horizons and strata except the Kilpatrick Zone.

Counsel for plaintiffs first contend, to quote from their brief, " * * * that this mineral servitude in its entirety, has been extinguished because of non-usage for more than ten years; that is non-usage

from July 11, 1939 to July 11, 1949. There was no production nor development of this particular servitude until the month of December, 1950."

The contention cannot be sustained. It is now well established in the jurisprudence of this court that where there is a forced unitization, on order of the Commissioner of Conservation, commercial production from any part of the unit interrupts the running of prescription as to all mineral servitudes within the unit. Sanders v. Flowers, 218 La. 472, 49 So.2d 858; Smith v. Holt, 223 La. 821, 67 So.2d 93; Childs v. Washington, 229 La. 869, 87 So. 2d 111; Jumonville Pipe & Machinery Co., Inc., v. Federal Land Bank of New Orleans, 230 La. 41, 87 So.2d 721, and Boddie v. Drewett, 229 La. 1017, 87 So.2d 516, respectively, on the docket of this court. Under the facts outlined above such doctrine is applicable here and militates against plaintiffs' main demand.

Neither can we conclude that the alternative demand is meritorious. Respecting it counsel for plaintiffs state: "In the alternative we contend that if this Honorable Court should hold that this mineral servitude has not been extinguished in its entirety, that it has been limited or restricted horizontally to the Kilpatrick Zone only, and is no longer in full force and effect as to other Zones and Formations. We have pointed out that a mineral servitude has, in the past, been restricted or limited vertically by use; by mineral lease and by contractual restrictions. In this particular case, we feel that this particular mineral servitude has been actually restricted or limited horizontally both by use and by the mineral lease."

Compulsory unitization on the order of the Commissioner of Conservation, restricted to particular zones, was likewise involved in Boddie v. Drewett, supra. Therein we said [229 La. 1017, 87 So.2d 517]: "* * * With respect to a mineral servitude, it is essential that there be exploitation of the land, either by good faith drilling operations thereon, albeit unsuccessful, * * * or by the extraction of the minerals lying under the land by draining or otherwise removing them through operations conducted from outside of the land. * * * It has been many times held that mineral leases are maintained beyond their primary terms by obtaining production in paying quantities from operations on units established by the Commissioner of Conservation embracing the leased tracts even though no drilling is conducted on the tracts themselves. * * * The same result obtains when a servitude is involved for it is plain that an actual use of the minerals occurs when they are extracted from under the land and, hence, it is immaterial whether the operations are conducted on the land burdened by the servitude or from without. Therefore, it cannot be doubted that, since the minerals underlying the 12-acre tract were

being withdrawn by the operation of the Josie M. Colvin No. 2 well, which was dually completed within the drilling unit in the Bodcaw and Vaughn sands on October 1, 1952, such extraction constituted a user of the servitude and the running of prescription was interrupted as of that date, if prescription had not already accrued."

In the Boddie case (as here) a horizontal division of the servitude was contended for, the argument advanced having been that the Commissioner's order constituted a drilling "obstacle" only as to the designated zones and it did not prevent the use and exercise of the servitude as to formations not thereby affected. The contention was rejected by the court.

■ In the instant case admittedly the servitude of the defendants was not contractually restricted or limited as to formations. They had the unqualified privilege of obtaining from beneath the land a stipulated portion of whatever minerals they could locate and extract; they did not have several rights to take minerals from particular pockets or levels. And since they exercised that unqualified privilege within ten years from the time it was granted to them, although the drilling operations were conducted pursuant to the unitization program and not on the 80-acre tract itself, there was a user of the servitude and, consequently, an interrupting of the running of prescription as to the entirety of it.

The defendants' user was in keeping with the contemplation of the parties when the mineral rights were conveyed. "To use a servitude, so as to effect an interruption of prescription, is to use it in the manner, contemplated by the grant or reservation." Louisiana Petroleum Co. v. Broussard, 172 La. 613, 135 So. 1, 2; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Boddie v. Drewett, supra. And it follows that the servitude here was not adversely affected by the ultimate limiting of The Hunt Oil Company's mineral lease to the Kilpatrick Zone or by the fact that the three wells from which the defendants shared produced only from that level.

For the reasons assigned the judgment appealed from is affirmed.