BOLIN, Judge.
This is a suit to determine ownership of the minerals in or produced from a 200-acre tract located in Caddo Parish, Louisiana. Plaintiff claims to be the owner of all the mineral rights under the North Half of North Half (N (4 of N Yi) of Section 28, and the Northeast Quarter of Northeast Quarter (NE 14. of NE 14) of Section 29, Township 18 North, Range 16 West, Caddo Parish, Louisiana. The basis for plaintiff’s claim is reservation of all minerals in a deed dated September 21, 1938, wherein the vendor conveyed this property to James P. Hammack. The map or plat of the property shows these five 40-acre tracts are contiguous and hence only one servitude was created by the reservation.
Numerous individuals were named defendants, all of whom filed motions for summary judgments and pleas of liberative prescription. The district judge, for reasons assigned, upheld the pleas of prescription and granted summary judgment in favor of all defendants. Plaintiff appeals.
There being no dispute as to the essential facts we shall adopt the chronological statement of pertinent events supplied in brief by appellant:
(1) On September 21, 1938, plaintiff’s ancestor in title sold the contiguous 200-acre tract in question to James P. Ham-mack, reserving all minerals.
(2) There was no drilling activity on any portion of this tract until December 1959, and plaintiff’s mineral servitude would have . prescribed for non-use on September 20, 1948, absent some event which suspended or interrupted the running of prescription.
(3) By deed dated January 23, 1947, plaintiff’s ancestor in title acquired from James P. Hammack a two-thirds interest in all minerals produced from the 200-acre tract in question, stating that the conveyance of these mineral rights was to become effective on September 20, 1948.
(4) By order of the Conservation Commissioner (Order No. 125-A, promulgated on June 19, 1947) the Pettit Lime and Travis Peak formations of the Greenwood-Waskom Field were unitized, effective August 1, 1947.
Under the terms of the first order the acreage covered by the mineral servitude was placed in different units, 120 acres being included in one and the remaining 80 acres in an adjacent unit. No portion of the 200 acres fell within the permissible drilling area for either unit.
(5) By order of the Conservation Commissioner (Order No. 170-1) the first conservation order was amended effective August 1, 1954. The second conservation order contained significant features chief of which was the placing of a part of the 80-acre tract within the permissible drilling area. However, the unit containing the 120-acre portion of the 200-acre tract was not rearranged, and no part of this latter portion fell within the permissible drilling area in the second unitization order.
In December 1959 and January 1960, over ten years after the deed of two-thirds of the minerals in September 1948, defendant Joseph Martin drilled and completed six wells as producers on the 200-acre *750 tract, all of these wells being located on the 120-acre portion thereof.
Defendants’ motions for summary judgment and pleas of prescription were based on their contention that the second conservation order removed any obstacle that may have been presented by the first conservation order, causing resumption of the running of prescription on the entire 200 acres of the servitude.
Plaintiff specifies as error the lower court’s ruling maintaining the exception of prescription and contends it is the owner of all, or at least a portion of the minerals in the 200-acre tract.
The thrust of plaintiff’s argument is that the first conservation order suspended prescription as to the entire mineral servitude under the “obstacle” theory as defined in Louisiana Civil Code Article 792 and developed by the Supreme Court in Boddie v. Drewett, 229 La, 1017, 87 So. 2d 516 (1956). The court there held the unitization order of the commissioner unitizing a 12-acre tract, upon which there was a mineral servitude but which was not in the permissible drilling area, suspended prescription since such order constituted an obstacle under Article 792 of the Louisiana Civil Code providing:
“If the owner of the estate to whom the servitude is due, is prevented from using it by any obstacle which he can neither prevent nor remove, the prescription of non-usage does not run against him as long as this obstacle remains.”
Opposed to this position is that of appel-lees who reassert their previous claim, upheld by the lower court, that the servitude has prescribed for non-use. It was further contended the Boddie case has no application to the present situation since, even should it be held that the first conservation order created an obstacle suspending prescription, the second order in 1954 placing a portion of the 80-acre tract within the permissible drilling area, commenced again the running of prescription.
Since rendition of the judgment below and lodging of this appeal the Louisiana Supreme Court has decided Mire v. Hawkins, 186 So.2d 591 (1966) which specifically overrules its previous holding in Boddie v. Drewett. The facts of the instant case are distinguishable from those in the Mire case in that in the latter case a small portion of the servitude was at all times within the permissible drilling area. In the case at bar, during the period from 1947-1954 no part of the servitude was within the permissible drilling area which places it squarely on all fours with the facts in Boddie v: Drewett. Nevertheless we consider this distinction unimportant in the light of the Supreme Court’s statement that after a further study of the opinion in Boddie “we have concluded that it was error to say that prescription was suspended due to the existence of an obstacle.”
The Supreme Court’s interpretation of Louisiana Civil Code Article 792 was based on the followiflg rationale:
“The requirement that the drilling for minerals within a unit be through a designated operator on a designated location, or by a joint cooperative effort on a designated location, may be a departure from the traditional notions of servitude user contemplated by the Civil Code, but the requirement is validly imposed by law in the Conservation Statute and by orders of the Commissioner for a public purpose in the interest of conserving the natural resources of the State. Owners of mineral servitudes, therefore, are charged by law with knowledge of the conservation laws, and it must be concluded in law that they tacitly ageed to acquire their mineral servitudes subject to pre-existing lawful regulations governing their use. It follows from this premise that what these mineral servitude owners urge us to classify as an obstacle is really no obstacle for it does not prevent the use of their servitude, it merely controls the method of user. * * * ”
*751 We conclude the conservation order of 1947 created no obstacle to drilling and, accordingly, the judgment of the lower court, sustaining the pleas of prescription and summary judgments, is affirmed, all costs to be borne by appellant.
Affirmed.