BLANCHE, Judge.
Plaintiffs-appellants claim the ownership of a one-fourth mineral interest in a 202.20 acre tract of land located in St. Mary Parish and known as Amanda Plantation. The primary issues are (1) whether the pendency of certain litigation[1] in St. Mary Parish over the validity of a mineral lease affecting the aforesaid property from September 12, 1940, to April 17, 1944, amounted to an “obstacle” to the use of the servitude, thus suspending the running of prescription as to the said servitude for the time said litigation was commenced until it was concluded, and (2) whether the action of A. Veeder Company, Inc., in instituting the aforesaid litigation resulted in an “unjust enrichment” to A. Veeder Company, Inc., giving rise to a quasi-contractual obligation requiring restitution of the amount by which plaintiffs were impoverished and defendants-appellees were enriched.[2]
The trial court maintained the plea of prescription filed by defendants-appellees and rejected plaintiffs’ demands at their cost. The trial judge in a thorough and well-reasoned opinion disposed of all the issues raised by appellants on appeal save one exception which we will comment upon later herein, and we take the liberty of adopting therefrom the following as the opinion of the Court:
“This suit concerns the ownership of a one-fourth 04th) mineral interest in a tract of land in St. Mary Parish, Louisiana, containing 202.20 acres, which tract of land is commonly known and referred to as ‘Amanda Plantation’. Plaintiffs trace their title to the claimed mineral interest to a certain mineral deed executed by A. Veeder Company, Inc., ancestor in title of defendants, as Grantor, in favor of David M. Picton, Jr., ancestor in title of plaintiffs, as Grantee, dated December 7, 1935 (Plaintiff’s Exhibit A). By virtue of the mineral deed above referred to, David M. Picton, Jr. acquired a one-fourth (J4th) mineral interest in several tracts of land owned by A. Veeder Company, Inc., among which was ‘Amanda Plantation’. None of the other lands covered by this deed were contiguous to ‘Amanda Plantation’. Previous to the execution of this mineral deed and on July 7, 1932, A. Veeder Co., Inc. had executed an oil, gas and mineral lease (Plaintiff’s Exhibit B), together with other parties, covering fifteen separate tracts comprising a total of 1331.29 acres (including ‘Amanda Plantation’, Tract 8 in the original lease)- and therefore the Picton mineral deed was executed subject to this lease. At this point it should be noted that at the time of the execution of the lease, A. Veeder Company, Inc., owned in fee, Tracts 1, 2, 3, 4, 5, 7, 8 (Amanda Plantation), 12, 13, 14 and 15 of said lease; however, the remaining lands covered thereby, viz.: Tracts 6, 9, 10 and 11, were owned by other parties who joined with the Veeder Company in executing the lease. Subsequent to the execution of the lease, which will be hereafter referred to as the ‘Siler lease’, the parties lessor and lessee executed an amendment thereto correcting the description of lands covered thereby, which instrument likewise contained a stipulation to the effect that the royalties on production which might accrue under the terms thereof were to be paid separately to the Lessors therein as the actual record ownership of the various lands therein leased may appear. This instrument of amendment although executed on January 17, 1935 was not recorded until February 24, 1938. The ‘Siler lease’ was subsequently assigned by the original lessee to John R. Black and A. T. Schwennesen (Stipulation Paragraph 2), who by instrument dated December 31, 1934 (Stipulation Paragraph 4) assigned such lease as to a portion of the acreage covered thereby, including the west 25 acres of ‘Amanda Plantation’ to Shell Petroleum Corporation and Amerada Petro *202 leum Corporation. The portion of the ‘Siler lease’ assigned to Shell and Amerada was by them formally released on January 18, 1938 (Stipulation Paragraph 4-A). The ‘Siler lease’, less the acreage assigned to Shell and Amerada, was eventually acquired by Pan American Production Company and others (Stipulation paragraphs 5, Sa, and 6), who thereafter caused to be drilled several wells in search of oil or gas during the year 1937 and succeeding years, some of which were productive, all of which wells were drilled on lands not subject to plaintiffs’ mineral servitude. No drilling operations were conducted on and no production was obtained from ‘Amanda Plantation’ until October 23, 1947, thirteen years following execution of the Picton mineral deed, when the Veeder No. 31 well was drilled and completed as a dry hole.
“No production was obtained from ‘Amanda Plantation’ until March of 1951 and all production from this tract ceased in August of 1961. (Stipulation Paragraphs 16 and 17). No part of ‘Amanda Plantation’ has ever been pooled or unitized with any other lands (Paragraph 12 of Stipulation).
“On September 12, 1940, after expiration of the primary term of the ‘Siler lease’, A. Veeder Company, Inc. filed a suit against Pan-American Production Company, et al., seeking cancellation of the ‘Siler lease’, which suit bears number 19S20, Docket of the 16th Judicial District Court for the Parish of St. Mary, Louisiana. David Picton, Jr. and his successors in title were not parties to this suit. Plaintiff in that suit sought cancellation of the ‘Siler lease’ because the primary term had expired without any exploration having been undertaken on the lands of the Veeder Company, including ‘Amanda Plantation’. Pan American Production Company defended on the ground that the ‘Siler lease’ was a joint lease as between lessor and lessee and that since it had drilled wells and was producing on other lands covered by said lease such action had the effect of maintaining the lease in its entirety. The matter was eventually heard by the Supreme Court of Louisiana ([205 La. 599] 17 So.2d 891), which Court determined that the ‘Siler lease’ was in fact joint as between lessor and lessee, and, accordingly, rendered judgment favorable to the defendants. A rehearing was denied in this matter on April 17, 1944 and on that date the judgment in this suit became final.
“Plaintiffs in the instant suit, on the basis of the facts above set forth, contend that the mineral servitude as it applies to ‘Amanda Plantation’ established by the deed of December 7, 1935, is still in existence, the prescription of non-use running against such servitude having been suspended during pendency of the litigation last referred to and their servitude having been drilled during the extended term thereof, and/or that the drilling and production under the ‘Siler lease’, a joint lease, although on lands not subject to their mineral servitude, had the effect of interrupting prescription on all mineral servitudes subject thereto.[3] On the other hand, defendants urge that the current of prescription running against plaintiffs’ mineral servitude was neither suspended nor interrupted and that same expired by reason of non-use ten years following its establishment and long prior to the initial operations on ‘Amanda Plantation’, which occurred in the fall of 1947.
“Plaintiffs initially contend that by virtue of the Picton mineral deed of December 7, 1935 (Exhibit A) David Picton, Jr. acquired, in addition to the one-fourth mineral interest in ‘Amanda Plantation’ and other lands; a like interest in the *203 ‘Siler lease’.[4] They next reason that when their grantor, A. Veeder Company, Inc., instituted suit against Pan-American Production Co., owner of said lease, on September 12, 1940, seeking a cancellation of said lease as to, among other lands, ‘Amanda Plantation’ that they thereby placed said lease in jeopardy during the pendency of such suit, viz.: September 12, 1940 to April 17, 1944, and that since the lessee was ultimately successful in this litigation that the lease term was extended for a comparable period of three years, seven months and five days. They next reason that since the ‘Siler lease’ was extended for this period that their mineral servitude was extended for a like period and drilling on the servitude tract during this extended period served to interrupt the prescription of non-use running against the Picton servitude because since Picton acquired both a one-fourth mineral interest in certain properties and a one-fourth interest in the ‘Siler lease’, it was therefore agreed between the vendor and vendee of the rights that the mineral interest would extend during the life of the lease even though this be beyond ten years.
“This contention of plaintiffs is wholly without merit for several reasons. To begin with, plaintiffs’ ancestor in title did not acquire any of the lessee’s rights in the ‘Siler lease’ by virtue of the December, 1935 mineral deed. The ‘Siler lease’ was executed and recorded long prior to the execution of the Picton mineral deed and therefore the mineral interest later conveyed by A. Veeder Company, Inc. to Picton was already burdened therewith. When Veeder did make conveyance of these minerals to Picton, it did so subject to said lease with the further provision that the Grantee was entitled to the royalties and gas rentals due and to become due under the terms of said lease and allocable to the interest conveyed. This is the extent of the rights acquired by Picton in the ‘Siler lease’, that is a right like the other lessors to participate in the payment of rentals and royalties due and to become due thereunder.
“It must next be observed that plaintiffs are in error when they suggest that by reason of the suit instituted by A. Veeder Company, Inc. against Pan-American Production Company that the term of the ‘Siler lease’ was extended for the period during which this litigation lasted, or for three years, seven months and five days. It'is true as suggested by plaintiffs that according to established Louisiana jurisprudence, where a lessor questions the validity of a lease, the term of the lease is suspended, the logic being that the lessee has been deprived of the exercise of the rights granted to him by the lease by the act of the lessor and he is therefore granted an extension beyond the primary term for the period during the primary term when the lease was placed in jeopardy. See Pennington vs. Colonial Pipeline Company, [5 Cir.] 400 F.2d 122; Fomby vs. Columbia County Development Co., 155 La. 705, 99 So. 537; Knight vs. Blackwell Oil & Gas Company, 197 La. 237, 1 So.2d 89; Baker vs. Potter, 223 La. 274, 65 So.2d 598. If when the validity of a lease is attacked the primary term has expired, the lease is ultimately determined to be either viable or subject to cancellation and there is no logic or considerations of equity which would require that the lessee litigant be given any *204 additional time within which to exercise the rights granted to him and this because if the lease is subject to cancellation or held viable the lessee has not in either case been deprived of his rights as lessee during the term of the lease.
“In this connection, it is noted that the primary term of the ‘Siler lease’ expired on January 2, 1938 and that the suit against Pan-American Production Company was not instituted until September 12, 1940, some two and one-half years later. Therefore, contrary to plaintiffs’ contention, it necessarily follows that although it may be said that the ‘Siler lease’ was placed in jeopardy by the Pan-Am suit filed in September, 1940, such suit did not have the effect of extending the term of such lease for any fixed period since the primary term of the lease had expired before the suit was instituted. Finally, in any event, even assuming that the term of the ‘Siler lease’ was extended by reason of this litigation, such extended term would and could not benefit Picton or his successors since they owned no part of the working interest in said lease and were therefore deprived of no rights under this lease during the period of such litigation. In other words, any extension of the lease term would not likewise extend the term of any mineral servitudes in lands subject to said lease.
“Plaintiffs’ final reasoning that since Picton acquired both a one-fourth mineral interest and a like interest in the ‘Siler lease’ that it was agreed that the mineral interest would extend during the life of the lease even though this be beyond ten years is likewise without merit. There is no language in the Picton mineral deed which would serve to indicate or even imply that the Grantors intended to contractually extend the life of the servitude to that of the lease. However, in any event, the parties to the Picton mineral deed at the time of its execution could not have stipulated effectively that the mineral servitude thereby established would extend beyond ten years and would therefore not be subject to the prescription of ten years, liberandi causa. The cases are legion in our jurisprudence to the effect that a grant or reservation of minerals is subject to the prescription of ten years non-use, even where it is stipulated in the contract that the mineral rights are granted for a period exceeding that period. Nabors Oil & Gas Co. vs. Louisiana Oil & Refining Co., 151 La. 361, 91 So. 765; Bodcaw Lumber Company vs. Magnolia Petroleum Company, 167 La. 847, 120 So. 389; [Munn] Nunn vs. Wadley, 192 La. 874, 189 So. 561; LeBleu vs. LeBleu, [La.App.] 206 So.2d 551. It necessarily follows that the Picton mineral servitude expired ten years following its establishment, irrespective of the continuance of the ‘Siler lease’, unless the prescription of non-use running against such servitude was either suspended by reason of obstacle and/or interrupted by use as contended by plaintiffs, which contentions will be next discussed.
“Plaintiffs next assert that by institution of the suit against Pan-American Production Company, wherein A. Veeder Company, Inc. sought cancellation of the ‘Siler lease’, the A. Veeder company, Grantor in the Picton mineral deed, by its own acts, placed the ‘Siler lease’ in jeopardy, which act created an obstacle to the exercise of the plaintiffs’ servitude and therefore under the provisions of R.C.C. Article 792 the prescription of non-usage running against plaintiffs’ mineral servitude was suspended during the period of this litigation, viz.: 3 years 7 months and 5 days. They next reason that since there was drilling on ‘Amanda Plantation’ in October of 1947, and thereafter the lessee drilled other wells thereon, some of which were producers, the last production being in 1961, that such operations during the extended period of the mineral servitude brought about by the obstacle served to interrupt the running of prescription and therefore the mineral interest is still vested in plaintiffs. The authority relied upon by plaintiffs to support this contention *205 (Pennington vs. Colonial Pipeline Company [supra] [)] involved the question as to whether or not a lessee was entitled to an extension of the term of its mineral lease in instances where the lessor filed suit seeking cancellation of the lease during its primary term, the rule of which case plaintiffs suggest should be applied to mineral servitudes. Conceding for sake of argument that the decision in the cited case is applicable to the facts of the instant matter this court is not convinced that the institution by the A. Veeder Company, Inc. of the Pan-Am suit created an obstacle to the proper exercise of the Picton servitude. David Picton, Jr., and/or his successors in title, were not parties to this suit and they were therefore not by reason thereof restrained from the use of their servitude. It can be argued that although plaintiffs were not parties to such suit that indirectly same constituted an obstacle in that the lessee under the ‘Siler lease’ would have been hesitant if not completely deterred from conducting drilling operations on the lands affected by that suit until such time as it was finally adjudicated. By the same token, when Picton acquired his mineral servitude he was aware that it was burdened with the ‘Siler lease’ and that such lease could be continued in effect beyond its primary term by drilling on other lands covered thereby, which were not subject to his mineral servitude, and that if such condition continued for ten years from the date on which his interest was created that same would be lost. Pursuing this thought further, it could be argued with much force that the record is void of any factual evidence to confirm that had not the Pan-Am suit been filed ‘Amanda Plantation’ would have been drilled prior to the normal expiration date of the Picton servitude and that the mere existence of a pending suit not supported by facts showing that the pending suit was actually an obstacle is insufficient. In this regard it is significant that there was no drilling on ‘Amanda Plantation’ until October of 1947 or more than three years after the judgment in the Pan-Am suit was final. It could also be forcefully argued that rather than a hindrance to the exercise of the servitude the litigation, although not participated in by plaintiffs, could possibly have been an aid to the servitude owners in having there [sic] servitude tract drilled within the life of the servitude. In this connection, it must be remembered that the plaintiffs in the Pan-Am suit were seeking to free themselves from what they considered an unfavorable lease. Under the conditions which existed when this suit was filed, the owners of ‘Amanda Plantation’ were receiving no rentals, no royalties and such property was not being developed, yet the tract was tied up and not subject to lease or exploration by others. If plaintiffs in the Pan-Am suit had been successful, this could conceivably have enured to the ultimate benefit of Picton and his successors in title. In the case of Perkins vs. Long-Bell Petroleum Co., 227 La. 1044, 81 So.2d 389, the Court rejected a contention that a suit was an obstacle and stated:
‘This argument might be persuasive in a case buttressed by a state of facts leading to the inevitable conclusion that the institution and pending of the lawsuit was actually a hindrance to the exercise of the servitude.’
“It is unnecessary, however, for this Court to determine whether or not the institution of the Pan-Am suit did constitute an obstacle to the exercise of the Picton servitude on those portions of ‘Amanda Plantation’ involved in the suit for it is clear that even if it be conceded, for sake of argument, that the suit was an obstacle to the user of the servitude, that plaintiffs’ contention is without merit since the obstacle did not affect the whole of ‘Amanda Plantation’, there being a portion thereof subject to the Picton servitude which was not then under lease and which was not involved in the Pan-Am suit and upon which plaintiffs could have exercised their right of servitude.
“The record reveals that a portion of ‘Amanda Plantation’ had been released *206 from the effect of the ‘Siler lease’ long prior to institution of the Pan-Am litigation (Paragraph 4 of Stipulation). In this respect, the instant matter is similar to Mire vs. Hawkins, [La.App.] 177 So.2d 795 (3rd Cir. 1965). In an earlier case, Boddie vs. Drewett, 229 La. 1017, 87 So.2d 516, the Supreme Court had held that where the servitude tract was entirely within an area on which drilling to a particular sand was prohibited by an order of the Department of Conservation, the Conservation order served as an ‘obstacle’ preventing the running of the ten year prescription of nonuser against the servitude. In the Mire case, the servitude tract was partially in and partially out of a unit, and that part in the unit was partially within and partially without an area on which drilling was prohibited by an order of the Department of Conservation. The Third Circuit in holding that the ten year prescription of nonuser ran against the entire servitude, both inside and outside the unit, and both inside and outside the prohibited area stated as follows:
‘Since drilling was thus permissible on at least a part of the servitude area at all times, there was no obstacle to the user of the servitude; since “if a definite mineral interest is granted (or reserved) by a single instrument covering the whole of a continuous tract of land only one servitude is created thereby, and the proper exercise of it on any part of the tract interrupts the accruing of prescription as to any and all of the remaining portion.” Gulf Oil Corporation vs. Clement, 239 La. 144, 118 So.2d 361, 362-363. (Italics ours.) Boddie vs. Drewett, upon which appellants rely, is thus distinguishable, since in that case no part of the servitude tract was within an area in which drilling was permissible.
‘The trial court, therefore, correctly held that the commissioner’s limited non-drilling order did not suspend prescription.’
“The Supreme Court in reviewing this matter on certiorari (186 So.2d 591, 240 La. 278) upheld the judgment of the Third Circuit, although in doing so it did not adopt the reasoning of the Third Circuit but rather rested its decision on overruling the holding of Boddie vs. Drewett (supra). The reasoning of the Third Circuit however is still pertinent, and that is, that where any part of the servitude can be used (and here there could not have been an obstacle as to that part of Amanda Plantation previously released from the ‘Siler lease’) even though some part may not, as a result of an obstacle, prescription is not suspended, but to the contrary, runs against the entire servitude.
“Able counsel for plaintiffs seeks to distinguish the facts of the instant case from that of Mire by urging that in the latter case the obstacle, though partial, was created by action of the Commissioner of Conservation, whereas in the instant case the obstacle, if one does in fact exist, was brought about by the positive action of the defendants in placing the ‘Siler lease’ in jeopardy. This is not a valid distinction since the holding of the Third Circuit in the Mire case is founded upon the finding that the obstacle was partial as opposed to complete and therefore that the servitude could have been exercised.
“Since it is uncontradicted that the obstacle, if any did exist, to the exercise of the plaintiffs’ mineral servitude over ‘Amanda Plantation’ was only partial in that plaintiffs were at all times free to exercise their rights over a portion of said property and since the proper exercise of said rights on said unencumbered portion would have had the effect of interrupting the current of prescription as to all it follows that there was in fact no obstacle within the intendment of R.C.C. Article 792 sufficient to suspend the prescription of non-use.
‡ ‡ # * jH ‡
“The record in this case reveals that no drilling operations were conducted on and no production was obtained from Amanda Plantation until October of 1947. Accordingly, having found that there existed no *207 obstacle to the exercise by plaintiffs of the right of servitude acquired by them over this tract on December 7, 1935, during the period of ten years next succeeding this date, and having found further that the liberative prescription running against this servitude was not interrupted during said period by drilling and production on other lands burdened by the ‘Siler lease’ but not subject to plaintiffs’ servitude, it is axiomatic that Defendants’ plea of ten year prescription of non-use is valid and will therefore be maintained.” (Written Reasons for Judgment, Record, pp. 207-218, 224-225)
For the first time in this Court appellants advance the argument of unjust enrichment. It is alleged that the unjust enrichment occurred as a result of the action of the defendants-landowners in conveying to plaintiffs a mineral servitude and an interest in an oil, gas and mineral lease and thereafter attacking the validity of the mineral lease. It is argued that the suit of defendants-landowners attacking the validity of the mineral lease caused operations under the lease to be halted with the result that the servitude which they had sold to plaintiffs expired and reverted to the said defendants-landowners for nonuse. The doctrine that one should not be unjustly enriched at the expense of another was recognized in the case of Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422, 432 (1967). However, the rule of that case has no application here, for the argument presupposes that the filing of the suit by defendants created an obstacle to plaintiffs’ use of the servitude, and as pointed out in the trial judge’s opinion, plaintiffs could have exercised their servitude on that part of Amanda Plantation not under the lease and not involved in the litigation at any time. Therefore, if it is conceded that the Pan-American litigation was an obstacle, then as plaintiffs have previously argued, the prescriptive period of ten years nonuser would have been suspended; on the other hand, if there was no obstacle, the ten-year prescription accrued and the servitude reverted to the landowners for nonuse. Thus, if there was an obstacle as contended by plaintiffs, it would not be necessary for them to rely on a doctrine of unjust enrichment. However, our finding that the litigation was not an obstacle to the use of their servitude makes the foregoing argument of plaintiffs superfluous.
For the above and foregoing reasons, the judgment of the lower court is affirmed, with all costs of this appeal to be borne by the plaintiffs-appellants.
Affirmed.

. A. Veeder Company, Inc. v. Pan American Production Company et al., 205 La. 599, 17 So.2d 891 (1944).

. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).

. On appeal plaintiffs abandon the argument that the Siler lease was a joint lease and that drilling on land although not subject to their mineral servitude had the effect of interrupting prescription on all mineral servitudes subject thereto. (Footnote by this Court)

. The lease provision which plaintiffs contend grants them an interest in the Siler lease provides as follows:
“IT IS UNDERSTOOD between the parties hereto that this sale is made subject to an Oil, Gas, Sulphur and Mineral Lease executed by A. VEEDER COMPANY, INC., and others in favor of ROY B. SILER, on July 7, 1932, recorded in Conveyance Book 4 — Y, page 132, Entry No. 56,923, on October 10, 1932, of the Conveyance Records for the Parish of St. Mary, State of Louisiana, made part hereof by reference ; but covers and includes one-fourth (14 th) of all the royalties and gas rentals due and to become due under the terms of said lease.” (Plaintiff Exhibit “A”, Record, p. 189)