BOLIN, Judge.
Plaintiffs-Appellants’ petition discloses that on November 29, 1915, W. H. Hunter, Trustee, conveyed unto Ruben Collins the North Half of the Northwest Quarter of Section 5, Township 19 North, Range 16 West, Caddo Parish, Louisiana, and in said conveyance reserved unto himself all of the mineral rights in and under the eighty acre contiguous tract. At the time of this conveyance there was outstanding against the property an oil and gas lease which had been executed by W. H. Hunter, Trustee, in favor of Standard Oil Company of Louisiana covering and affecting the eighty acre tract. About the year 1914, a well was drilled by Standard Oil Company in the Northeast corner of this eighty acre tract, and said well had produced oil in paying quantities from that date to the time of the filing of the petition. In 1943, Carter Oil Company (which had acquired the lease from Standard Oil Company) released its interest in the lease to W. H. Blunter, Trustee, as to all of the North Half of the Northwest Quarter of Section 5, less ten acres in a square in the Northeast corner of the Northwest Quarter of Section Five, on which the well was located. On August 28, 1959, an oil and gas lease was executed by The Hunter Company, Inc. covering all of the eighty acre tract of land, except the ten acres on which the well was located, in favor of Lee Kinnebrew. A portion of this lease was assigned by Kinnebrew to the defendants, Jack C. Wilkerson and Mildred W. Staley, wife of Joe H. Staley, and a well was drilled on this portion which was producing oil when this action was instituted.
The fee title to the eighty acre tract of land passed by mesne conveyances to the plaintiffs in this case, O. G. Collins and W. R. Chaddick, and they pray in their petition to be declared the owners of the mineral rights under that portion of the eighty acre tract that was covered by the release executed by Carter Oil Company in 1943.
On the basis of these facts, plaintiffs contend that they, as owners of the surface, also own the minerals even though there has been continuous production from the North Half of the Northwest Quarter of Section 5, from prior to the time the surface was sold and the minerals reserved in 1915 to the present date.
All defendants filed exceptions of no cause of action which were sustained by the lower court and the suit dismissed. From this judgment of dismissal, the plaintiffs have appealed.
Although plaintiffs do not specifically allege that the release of seventy acres from the 1913 mineral lease divided the servitude created in 1915, nevertheless, in their brief, they have correctly stated the only issue presented to be:
“ * * * whether or not the ten year period of prescription of liberandi causa, or non-user, started to run in September, 1943, when the Carter Oil Company released to W. H. Hunter, Trustee, all of the N/2 of the NW/4 of Section 5, T19N, R16W, except for *913 ten acres in a square in the northeast corner of the NW/4 of said Section 5.”
Or, simply stated, the only issue here is: Does a release of a portion of a lease covering a contiguous mineral servitude divide the servitude even though production is continuous from the servitude?
It is well established by numerous decisions in Louisiana jurisprudence that, when one sells a contiguous tract of land and reserves the minerals under same, he creates a single mineral servitude and any drilling operations or production from any part of this servitude keeps the whole alive. As stated in the case of Connell v. Muslow Oil Company, 1937, 186 La. 491, 172 So. 763, 766:
“The rule of law that controls this case is that the exercise of the mineral rights, or servitude, on any part of one continuous tract of land upon which the servitude is imposed is considered an exercise of the right on the whole tract.”
In Patton et al. v. Frost Lumber Industries et al., 1933, 176 La. 916, 147 So. 33, 34, each of the two plaintiffs owned forty acres, forming a part of a continuous tract containing approximately thirty thousand acres, under which the defendant owned the mineral rights. The plaintiffs claimed that the servitude on their two tracts, of forty acres each, was extinguished by prescription because no well had been drilled on either of their forty acre tracts during ten consecutive years. It was held that the drilling of wells on other parts of the continuous tract of thirty thousand acres had interrupted the prescription on the parts of the land owned by the plaintiffs. In so deciding, the Court said:
“The owners of this servitude did exercise it by drilling and producing gas within the ten-year period. While no well was ever drilled on'the particular land owned by these plaintiffs, yet at least ten producing gas wells have been drilled on other portions of this large continuous tract, eight of which within ten years from the date on which the Federal Petroleum Company acquired its servitude on January 12, 1917. The nearest producing well to plaintiffs’ property is approximately three miles. The others are from four to ten miles away. But, as we have stated, they are all on the same continuous tract of land of which plaintiffs’ lands form a part.”
Thus, the general rule of law applied to the case at bar is that the continuous production of the well located in the Northeast corner of the eighty acre servitude constituted a continuous exercise of the right on the whole tract and kept the mineral servitude alive.
However, it is contended by the plaintiffs that, when the lessee executed a release of a portion of the lease covering the eighty acre tract, this release divided the mineral servitude. Although the release is not filed in the record, we must assume it was not signed or executed by anyone other than the lessee. Unless this release executed by the lessee divided the mineral servitude, there is then no question under Louisiana jurisprudence that the mineral servitude as to the whole eighty acre tract has been kept in effect by continuous production from a well located thereon. Therefore, let us consider the effect of the execution of the release.
In the case of Levy v. Crawford, Jenkins & Booth, 1940, 194 La. 757, 194 So. 772, the facts were similar to those of the case at bar. On October 19, 1917, the defendant, Crawford, Jenkins & Booth, conveyed to Raines a four hundred acre contiguous tract of land situated in three sections. The plaintiff, Levy, acquired the land from Raines. Prior to this sale by the defendant, it had executed an oil and gas lease covering the four hundred acre tract. Also, prior to the sale, the lessee, Atlas Oil Company, executed assignments of the lease dividing the lease into three separate tracts. In 1919, a gas well was *914 drilled on one of the leases and, subsequently, other wells were drilled. Thereafter, the lease was released as to all of the property except for one hundred twenty acres on the four hundred acre tract. The mineral owner then executed an oil and gas lease covering certain acreage out of the four hundred acre tract which was part of the property that had been released from the previous lease. The plaintiff sought a judgment decreeing the loss of the minerals under this particular acreage by prescription on the grounds that the division of the lease had divided the servitude. The court held the defendant sold a four hundred acre contiguous tract and reserved the mineral rights and, thus, created one servitude and that production from any part of the servitude kept the whole alive. The court further held that the division of the leases and the release did not affect the mineral servitude.
In Jantz v. Long Bell Petroleum Company, 1956, 229 La. 821, 86 So.2d 918, 924, plaintiff was the owner of a tract of land covered by a portion of a large mineral servitude owned by defendant. Plaintiff, claiming ownership of the land, filed a jacti-tory action against the mineral owner alleging that the defendant was slandering his title by claiming to be the owner of the minerals under the land. Defendant filed an exception of want of possession in plaintiff on the ground that a well had been drilled and was producing on the servitude, on a tract contiguous to plaintiff’s land. One of the theories advanced by plaintiff in claiming that the minerals had prescribed as to his tract, hence giving him sufficient possession to institute the jactitory action, was the large servitude was divided and limited to the respective portion of the servitude covered by each of several different oil and gas leases granted by the mineral owner on different parts of the servitude. On this point the court held:
“Equally without merit is the contention that each time defendant leased a portion of the land covered by the servitude on the whole, it thereby created a separate servitude, covering only the leased acreage. The decision of the Supreme Court in Hunter [Co.] v. Ulrich, 200 La. 536, 8 So.2d 531, answers that proposition adversely to counsel’s contention.”
In view of this holding that the execution of separate mineral leases covering a portion of a servitude does not divide the servitude, it seems to us rather illogical to contend that the unilateral release of such a lease would divide the servitude.
Although we have been cited no case where it has ever been contended that a release by a lessee as to a portion of the land covered by a servitude divided the servitude, it has been expressly held that a release as to all of the land except for one zone did not divide the servitude. This was decided in the case of White v. Frank B. Treat & Son, Inc., 1956, 230 La. 1017, 89 So.2d 883. In that case, a servitude was established on July 11, 1939, when the plaintiff’s ancestor in title conveyed a contiguous eighty acre tract and reserved the minerals under same. There was no development on the eighty acres within the ten years following the establishment of the servitude, but on March 19, 1947, the acreage was included in a drilling and production unit established by the Louisiana Commissioner of Conservation, which unit was restricted to the Kilpatrick Zone. In 1950, the lessee, who had the lease covering the eighty acre tract, released all interest in the lease as to all sands, horizons and strata except the Kilpatrick Zone. It was contended that this created a division of the servitude. The court held that the inclusion of this acreage in the unit interrupted the running of prescription and that the limiting of the lessee’s lease to the Kilpat-rick Zone did not in any way affect the mineral servitude.
Counsel for appellants cite four decisions as authority that the servitude was divided by the release of a part of the lease on the servitude. These decisions are *915 Spears v. Nesbitt, 1941, 197 La. 931, 2 So.2d 650; Elson v. Mathewes, 1953, 224 La. 417, 69 So.2d 734; Childs v. Washington, 1956, 229 La. 869, 87 So.2d 111, and Hunter Company v. Ulrich, 1942, 200 La. 536, 8 So.2d 531. We therefore, deem it appropriate to briefly comment on these cases. The Spears v. Nesbitt case did not involve a situation where there was any actual drilling on the mineral servitude or production from the mineral servitude as we have in the instant case, so it is readily distinguishable on that ground alone. The landowner and the mineral owner jointly executed two integrated leases dividing the acreage affected by the mineral servitude and the court held they thereby clearly contracted with each other that the operation on either lease block would not affect the rights of the landowner or the mineral owner under the other.
Elson v. Mathewes, supra, like Spears v. Nesbitt, involved a unitization agreement executed by the landowner and the mineral owner jointly. The court merely followed the Spears case and held that a landowner and a mineral owner might contract jointly to limit or divide the servitude. Since the landowner and the mineral owner are the parties who created the servitude, it is certainly logical that they can contract together to limit it. This is quite different from the instant case where it is contended a lessee, who holds his rights from the mineral owner, may unilaterally divide the mineral servitude by the execution of a release.
In Childs v. Washington, supra, it was held that the Commissioner of Conservation had, by his unitization order establishing a unit, accomplished the same result as if the landowner and mineral owner had by contract formed the drilling unit and reduced the servitude. It is noteworthy that in none of the above cases was a well drilled on the servitude involved as in the case at bar, and all of the cases are based on the landowner and mineral owner by contract dividing or reducing the servitude.
Hunter Company v. Ulrich, supra, does not appear to us to be favorable to the plaintiff’s contention. The court merely held that, when a party sold several noncon-tiguous tracts of land and reserved a mineral servitude, he created a separate servitude as to each noncontiguous tract. In our case, of course, we have only one contiguous tract and one servitude.
Because appellants have not shown that the defendants performed any acts to divide the servitude, this Court is limited in its decision to the simple propositen of whether the unilateral act of a lessee in releasing a portion of a lease divides a mineral servitude owned by its lessor.
In view of the jurisprudence outlined herein, we find no justification for a conclusion that such an action divides the servitude, and accordingly, the judgment of the lower court sustaining the exceptions of no cause of action is affirmed at appellants’ cost.
Affirmed.