170 So.2d 259 (1964)
Thelma de Graffenried GUNBY et al., Plaintiffs-Appellees,
v.
COMMERCIAL SOLVENTS CORPORATION et al., Defendants-Appellants.
No. 10295.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1964.
Rehearing Denied January 7, 1965.
*260 Shotwell & Brown, Monroe, for appellants.
Sholars, Gunby, Albritton & Hayden, Monroe, Deutsch, Kerrigan & Stiles, New Orleans, and G. Allen Kimball, Lake Charles, for appellees.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
In this possessory action five parties allege they are in actual physical possession of the minerals and mineral rights in, on and under a large continuous and contiguous plot of land comprising a portion of the Seale Plantation in Ouachita Parish. Robert A. Stacy, record owner of an oil and gas lease on part of the property, is also a party plaintiff. Made defendants are Commercial Solvents Corporation, Guy O. Barr and W. L. Barr who are alleged to be disturbing plaintiffs' possession of the minerals and mineral rights in, on and under the described land. After certain preliminary pleadings were disposed of defendants filed an answer and reconventional demand, following which plaintiffs filed a motion for summary judgment. Based upon the pleadings, exhibits, stipulations and affidavits, summary judgment was rendered in plaintiffs' favor from which defendants appeal.
The portion of the Seale Plantation under litigation is a continuous and contiguous tract, more particularly described as follows:
Sections 39 and 40, Township 20 North, Range 3 East; Sections 39, 40 and Lots 1, 2, 3, 4 and that portion of Lot 5 lying within Lot 1 of Collins Survey of Seale Plantation as per plat recorded in Plat Book 1, page 23, records of Ouachita Parish, Louisiana, all in Section 12, Lot 1 of Section 11, Township 19 North, Range 3 East.
For convenience in the presentation of their case defendants have divided the lands as follows:
TRACT A
Sections 39 and 40, Township 20 North Range 3 East and Section 39, Township 19 North, Range 3 East, Ouachita Parish, Louisiana.
TRACT B
Section 40 and Lots 1, 2, 3, 4 and that portion of Lot 5 lying within Lot 1 of the Collins Survey of Seale Plantation as per plat recorded in Plat Book 1, page 23 of the records of Ouachita Parish, Louisiana, all in Section 12 and Lot 1 of Section 11, Township 19 North, Range 3 East, Ouachita Parish, Louisiana.
TRACT C
Lot 2 of Section 1, Township 19 North, Range 3 East, Ouachita Parish, Louisiana. (This tract is not involved in this suit, but is contiguous to Tracts A and B and is a part of Seale Plantation.)
Defendants admit plaintiffs are in possession of the minerals under Tracts A and C, but deny their possession as to Tract B.
On February 11, 1952, Rowena Hirsch Arent, the then fee simple owner of all the property comprising the Seale Plantation, conveyed same to Commercial Solvents Corporation. In this deed appears the following stipulations:
"There is excepted from the above described lands and excluded from this sale and transfer thereof, all of the oil and gas, and oil and gas rights in, on, and under said lands together with full rights of ingress and egress to and from each and every part of all of said lands for the purpose of prospecting, developing *261 and drilling for oil and gas, also all necessary rights for the production, storage, transporting and marketing of oil and gas. There is also excepted herefrom all wells, well connections, well equipment and pipelines now located on the above described property.
"It is agreed that no further wells shall be drilled and no additional pipelines or tanks shall be located on said property by this Vendor; her heirs or assigns, within three hundred (300) feet of any dwelling, barn or permanent structure placed on the land by Vendee, its successors or assigns.
"This sale is made subject to all rights-of-way or other servitudes heretofore granted and of record in the office of the Clerk of Court and Recorder of Mortgages of Ouachita Parish, Louisiana."
In August, 1930, George Gunby purchased from Abe Arent an undivided one-fourth of the minerals on several noncontiguous tracts in Ouachita Parish; included among them was Tract C described herein. At the time Gunby purchased one-fourth of the minerals under Tract C there was a producing gas well thereon which produced until 1962. It is undisputed that a gas well was also drilled on Tract A in 1929, which was producing gas at the time of trial. It is conceded that on Tract B there has been no exploration for oil or gas.
This being a possessory action, the following provisions of the LSA-Code of Civil Procedure are applicable:
Art. 3658:
"To maintain the possessory action the possessor must allege and prove that:
"(1) He had possession of the immovable property or real right at the time the disturbance occurred;
"(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
"(3) The disturbance was one in fact or in law, as defined in Article 3659; and
"(4) The possessory action was instituted within a year of the disturbance."
Art. 3660:
"A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper. * * *"
Art. 3661:
"In the possessory action, the ownership or title of the parties to the immovable property or real right is not at issue. No evidence of ownership or title to the immovable property or real right shall be admitted except to prove:
"(1) The possession thereof by a party as owner;
"(2) The extent of the possession thereof by a party; or
"(3) The length of time in which a party and his ancestors in title have had possession thereof."
Also relevant are the following Articles of the LSA-Civil Code:
Art. 3455:
"The action which a possessor for one year has against a person disturbing his possession, to be maintained in it or restored to it, as is said in the preceding article, shall be decided before pronouncing on the question of ownership, and the real owner shall not be allowed to repel it by endeavoring to prove his right."
*262 Art. 3442:
"When a person has once acquired possession of a thing by the corporal detention of it, the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either himself or by others."
The Supreme Court of Louisiana used the following language in the case of International Paper Co., v. Louisiana Central Lumber Co., 202 La. 621, 12 So.2d 659 (1943) relative to the possession of minerals by a mineral servitude owner and what must be proved to defeat that possession:
"* * * if the possessor of the land holds under a deed which on its face excepts the mineral rights, or if the socalled slanderer holds a recorded deed for the mineral rights, the possessor of the surface of the landin order to maintain his jactitation suitmust allege and make a prima facie showing that the outstanding claim of the slanderer for the mineral rights has been extinguished by the prescription of ten years liberandi cause. In such a case the possessor of the surface as owner of the land cannot maintain a jactitation suit against a defendant who has a recorded deed for the mineral rights if the defendant is actually and adversely possessing or exercising the mineral rights. Mineral rights and mineral leases are by Act 205 of 1938 `defined and classified as real rights and incorporeal immovable property, and may be asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights'. It is declared in article 3432 of the Civil Code that possession of incorporeal property, such as servitudes, is had by the exercise of such rights. See Connell v. Muslow Oil Co., 186 La. 491, 172 So. 763; Allison v. Maroun, 193 La. 286, 190 So. 408; and In re Mt. Forest Fur Farms of America, Inc., 122 F.2d 232, where the United States Circuit Court of Appeals for the Sixth Circuit reviewed extensively the law of Louisiana recognizing that mineral rights are subject to actual possession, adverse to the possessor of the land itself, by the exercise of such rights."
Plaintiffs' position is that the conveyance of the property to Commercial Solvents Corporation in 1952 was as one continuous and contiguous tract; that the exclusion of all minerals from the transfer created one servitude over the entire property; that production from the two wells on Tracts A and C, which were integral and contiguous parts of the whole property, interrupted the running of prescription on the entire tract and thereby maintained plaintiffs' possession of the minerals and mineral rights in, on and under the entire property.
Defendants' argument is that the mineral reservation in the 1952 deed from Mrs. Arent to Commercial Solvents did not create a servitude on the property in Tract C because said land was already burdened with a servitude by sale of one-fourth of the minerals thereunder to Gunby in 1930.
The crux of this case is whether plaintiffs have shown they continued in possession of the minerals and mineral rights in, on and under the entire property conveyed by Mrs. Arent to Commercial Solvents in 1952. This in turn depends upon whether the production of oil and gas from any part of one continuous, contiguous tract of land constitutes possession of the minerals and mineral rights in, on and under the entire tract, even though such production was obtained under the smaller contiguous tract prior to the creation of the servitude on the entire tract.
We think the mineral reservation of 1952 created a servitude on all the property conveyed to Commercial Solvents. *263 Production of minerals from any part of one continuous, contiguous tract of land constitutes production from the whole of the tract and preserves the servitude on the whole. Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207 (1920); Lee v. Giauque, 154 La. 491, 97 So. 669 (1923); Collins et al. v. Hunter Co., Inc., (La.App. 2 Cir., 1961) 128 So.2d 911, and cases cited therein.
From the date of the mineral reservation in 1952, Mrs. Arent and her successors in title had a right to go on any portion of the land therein described in order to explore for minerals. The production from under the land which had been previously burdened with a servitude would of necessity have to be divided with Mr. Gunby or anyone entitled to the proceeds thereof according to their fractional interest in the minerals which were produced. Our courts have repeatedly held that a mineral servitude which covers the whole of a tract of land is one servitude subject to one user and continues to exist as such even though fractional mineral interests are outstanding on portions of the property subject to the single servitude. Gulf Oil Corp. v. Clement et al., 239 La. 144, 118 So.2d 361 (1960); Hodges v. Norton, 200 La. 614, 8 So.2d 618 (1942); Ohio Oil Company v. Ferguson, 213 La. 183, 34 So.2d 746 (1946).
Defendants' contention that not more than one servitude can exist simultaneously on the same tract of land is not well founded. Of course, two servitudes as to the whole mineral interest cannot exist simultaneously on the same tract of land (LSA-C.C. arts. 656, 657) but numerous mineral servitudes can exist simultaneously as to fractional interests on the same piece of land. Huckabay v. Texas Company, 227 La. 191, 78 So.2d 829 (1955); Starr-Davis Oil Co. v. Webber, 218 La. 231, 48 So.2d 906 (1950).
Assuming for the sake of argument that the sale of one-fourth of the minerals to Gunby on Tract C in 1930 did create a mineral servitude in favor of Gunby on that property, the 1952 deed from Mrs. Arent to Commercial Solvents Corporation burdened that particular tract of land with an additional servitude, the obligation of the two servitude owners being to recognize the right of each to search for and share in his proportionate part of the production. Mrs. Arent and her successors in title to the minerals had a right to go on any portion of the property subject to the mineral reservation in the 1952 deed and search for minerals. In like manner, assuming Mr. Gunby had a servitude in his favor on the smaller tract, he had a right to go on that tract and search for minerals.
We think the final paragraph of the trial judge's written opinion is a fitting summary to this case which we take the liberty of quoting:
"In the present case, on February 11, 1952, Mrs. Rowena Hirsch Arent, in her sale to Commercial Solvents Corporation, created a servitude on all the land conveyed to Commercial Solvents Corporation. On that land were two producing gas wells. One is producing to this date. These facts are not disputed. In the Court's opinion, the production of these wells interrupted any prescription on all lands conveyed in this deed, and the plaintiff is entitled to a summary judgment as prayed for in its Motion."
For the reasons assigned the judgment appealed from is affirmed at appellants' costs.
In compliance with LSA-Code of Civil Procedure, Article 2089, the immovable property affected by this judgment is described as follows:
Sections 39 and 40, Township 20 North, Range 3 East, Sections 39, 40 and Lots 1, 2, 3, 4 and that portion of Lot 5 lying within Lot 1 of Collins Survey of Seale Plantation as per plat recorded in Plat *264 Book 1, page 23, records of Ouachita Parish, Louisiana, all in Section 12, Lot 1 of Section 11, Township 19 North, Range 3 East.
Affirmed.