PRICE, Judge.
This concursus proceeding was brought by Barnwell, Inc. to obtain judicial determination of the ownership of a one-half of one-eighth mineral royalty interest under 20 acres of land described as the East Half of the Northeast Quarter of the Northeast Quarter (E 14 of NE '}4 of NE J4) of Section 24, Township 19 North, Range 9 West, Webster Parish, Louisiana. This 20 acre tract comprises a part of an 80 acre drilling unit known as the Barnwell Drilling Company James LU-B. Floy #1 established by Order 457-A-4 of the Louisiana Department of Conservation, applicable to the James Lime Formation of the Minden Field. The concursus petition alleges that there are adverse claims being asserted to the ownership of this mineral royalty interest by defendants, Marjorie F. Peterson, as widow and legatee of her deceased husband, P. E. Peterson; Mrs. Floy Fordham Morton, individually and as Executrix of the last will of her deceased husband, J. E. Morton; and Sam E. Carter.
Mrs. Morton and Mr. Carter each filed answers to the concursus proceeding, contending that they are entitled to the royalties accruing to the disputed interests as the result of a servitude created by the sale on May 27, 1954, of the 20 acre tract by J. E. Morton to P. E. Peterson with a reservation unto the vendor of one-half of all of the oil, gas and other royalties underlying the property. Mrs. Peterson, in answer to the proceeding, contends that the mineral servitude created in the sale on May 27, 1954, has prescribed by the prescription of ten years liberandi causa.
The pertinent facts that were stipulated by the parties at the time of the trial are as follows:
1. On May 27, 1954, J. E. Morton conveyed to P. E. Peterson the E 54 of NE 54 of NE 54 Section 24, Township 19 North, Range 9 West, Webster Parish, Louisiana, reserving for himself, his heirs and assigns one-half of the oil, gas and other minerals underlying said lands.
2. On March 27, 1959, Morton conveyed to Sam E. Carter royalty interests of one-fortieth of all the oil, gas and other minerals produced from the 20 acre tract.
3. During the year 1961 Morton and Peterson granted oil, gas and mineral leases to V. S. Parham covering the 20 acre tract. Parham assigned these oil and gas leases to Monsanto Chemical Company.
4. On May 8, 1961, the Department of Conservation of the State of Louisiana issued its Order 457-A-2, creating drilling and production units for the James Lime formation in the *743 Minden field. One of the drilling and production units created by the Department of Conservation Order 457-A-2 was an 80 acre tract described as the N J4 °f NE 14, Section 24, Township 19 North, Range 9 West. All separately owned tracts, mineral leases and other property interests within the 80 acre unit were pooled and consolidated.
5. On May 27, 1962, the Department of Conservation of the State of Louisiana issued its Order 457-A-4, dissolving the unit above referred to, and in lieu thereof created a drilling and production unit composed of the N j4 of NE J4 except the N 14 of NE 14 of NW 14 of NE 54; N 14 of NW 14 of NE 14 of NE ■14, Section 24, together with S 14 of SW 14 of SW 14 of SE 14 and S }4 of SE 54 of SE 14 of SE 14, Section 13, all in Township 19 North, Range 9 West, and the separately owned tracts within the unit created were pooled and consolidated to be operated as one lease and one property for the production of oil and hydrocarbons from the James Lime.
6. During the months of October, November and December, 1962, Monsanto Chemical Company, the owner of oil, and gas leases covering the Peterson-Morton minerals drilled a well on the unit created by Department of Conservation Order 457-A-4. The well wás drilled in good faith to the James Lime formation. It was abandoned as “dry” on December 13, 1962. The well was not located on the 20 acre Peterson tract, but was drilled on adjacent lands with which the Peterson 20 acre tract had been pooled and unitized by the Department of Conservation.
7. During the year 1966 Barnwell Oil Company, the owner of oil and gas leases covering the Peterson-Morton minerals drilled a well on the unit created by Department of Conservation Order 457-A-4. This well was completed as a “producer” during January, 1967, and is located on the 20 acre tract above described which forms a part of the unit created by Department of Conservation Order 457-A-4.
The case was tried by the district court on the stipulation of facts and the sole question presented to the court for decision was whether or not the drilling of a dry hole, in good faith, on a portion of a drilling unit created by a compulsory order of the Louisiana Department of Conservation, interrupted the running of prescription liberandi causa on the Morton-Peterson servitude, on which no drilling was conducted, although it was included in the compulsory drilling unit.
The district court in its written reasons for judgment relied on the case of Mire v. Hawkins, 249 La. 278, 186 So.2d 591 (1966), and held that the prescription liberandi causa had been interrupted by the drilling of the dry hole in the year 1962, which was within ten years of the creation of the servitude.
The judgment of the court therefore recognized the ownership of the mineral interest in question to be vested in the defendant, Mrs. Floy Fordham Morton, subject to the royalty interest conveyed to defendant, Sam E. Carter. The adverse claimant, Mrs. Marjorie Peterson, perfected this suspensive appeal, assigning as error the finding of the district judge that the drilling of a dry well in a compulsory drilling unit, but not on the property burdened with the servitude, had the effect of interrupting the running of prescription, or constituted user, of the servitude located within the unit.
The matter before the court presents solely a question of law and it is apparent to us that the district court has followed the *744 latest expression of the Supreme Court of this State in resolving this question.
For a period of approximately ten years the case of Boddie v. Drewett, 229 La. 1017, 87 So.2d 516 (1956), was the law of this State on this question. The Supreme Court in that case found that the district court erred in holding that the drilling of a dry hole in a compulsory drilling unit, created by the Department of Conservation, would interrupt the running of prescription on all lands burdened with a mineral servitude within the unit, even though the drilling operation was not actually on the servient lands.
The court in the Boddie case set forth the requirements necessary to constitute user of a mineral servitude in the nondrill-ing area of a drilling unit as follows:
“ * * * To use a servitude so as to effect an interruption of prescription is to exercise the right in the manner contemplated by the grant or reservation. Louisiana Petroleum Co. v. Broussard, 172 La. 613, 135 So. 1. With respect to a mineral servitude, it is essential that there be exploitation of the land, either by good faith drilling operations thereon, albeit unsuccessful, or by the extraction of the minerals lying under the land by draining or otherwise removing them through operations conducted from outside of the land. It has been many times held that mineral leases are maintained beyond their primary terms by obtaining production in paying quantities from operations on units established by the Commissioner of Conservation embracing the leased tracts even though no drilling is conducted on the tracts themselves. The same result obtains when a servitude is involved for it is plain that an actual use of the minerals occurs when they are extracted from under the land and, hence, it is immaterial whether the operations are conducted on the land burdened by the servitude or from without.”
The decision of the district court in that case was affirmed on other principles developed by the Supreme Court relating to the suspension of the running of prescription because of an obstacle to the use of the servitude by virtue of the order of the Commissioner of Conservation.
In the later case of Mire v. Hawkins, supra, decided in 1966, the Supreme Court had occasion to discuss its previous opinion in the Boddie v. Drewett case and declared that its decision was erroneous. We find it appropriate to quote the following portions of the court’s opinion in that case, which we feel is pertinent to the question before this court, to-wit:
“The Boddie opinion was signed by three members of the court with four members concurring. After a further study of the opinion in that case we have concluded that it was error to say that prescription was suspended due to- the existence of an obstacle. The reason is that this declaration, under the facts, is inconsistent with the objectives, aims and policies of our conservation law. We are of the view that the district judge was correct in holding that the drilling of a dry hole in a good faith effort to obtain production was a user of the mineral servitude on the twelve-acre tract within the nondrilling area of the unit; and, therefore, prescription on the servitude was interrupted.” (Page 595 of 186 So. 2d)

“It may be asserted under this theory of the case that the pooling of the mineral servitude belonging to plaintiffs with the designation of an operator for the unit having the right and authority to conduct drilling operations on behalf of all mineral owners within the unit was, in effect, permitting the exercise of the drilling privilege relating to plaintiffs’ servitude through a representative, and on lands, designated by law. This is so because the exploration effort of the operator is considered as an effort on behalf of all the interests in the unit; if this effort is successful, the resulting production, to *745 which all tracts contribute, will be distributed to all interests in the proportion which their acreage in the unit bears to the entire acreage. Good faith drilling on any part of the unit should likewise be considered as good faith drilling as to the whole unit and a user of all the servi-tudes within the unit.” (Page 596)
******
“The conservation law and regulations promulgated pursuant thereto also seek to prevent economic waste and waste of the servitude owner’s minerals underlying the tract; and they are designed to assure the greatest ultimate recovery from the pool — another advantage to all concerned.
“We think this result is more compatible with the unitization concept in our conservation law than the announcement in the Boddie case, and it is a more logical extension of other decisions of this court wherein we recognized that where the drilling of a well on a unit results in commercial production of oil or gas, the production has the effect of extending the primary term of the leases affecting all tracts within the unit and interrupts prescription accruing against any mineral servitude within the unit. Jumonville Pipe and Machinery Co. v. Federal Land Bank of New Orleans, 230 La. 41, 87 So.2d 721 (1956); Le Blanc v. Haynesville Mercantile Co., 230 La. 299, 88 So.2d 377 (1956).” (Pages 596 and 597)
In accordance with the pronouncement of the majority opinion in the Mire v. Hawkins case, we can find no error in the reasons for judgment of the district judge in the case under consideration. The stipulated facts reflect the servitude to have been created on May 27, 1954, and an order of the Conservation Commissioner pooled the property burdened with the servitude into a drilling unit on May 27, 1962. A well was drilled in good faith within this drilling unit in the months of October, November and December of 1962. The drilling of this well constituted a user of all mineral servitudes within the unit and thereby interrupted the running of prescription. Subsequently, the completion of a well capable of producing oil or gas on the 20 acre tract in question, in the year 1966, again interrupted prescription and constitutes a continued use of the servitude so long as oil or gas is produced therefrom. Gunby v. Commercial Solvents Corp., La.App., 170 So.2d 259 (2d Cir. 1964).
We are, therefore, of the opinion that the judgment appealed from should be, and it is hereby affirmed at appellant’s cost.